UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EPL OIL & GAS, LLC,<br><br>    *Plaintiff*,<br><br>    vs.<br><br>TRIMONT ENERGY (NOW), LLC;<br>WHITNEY OIL & GAS, LLC<br><br>    *Defendants*. | CIVIL ACTION NO.: 6:22-CV-208 |

**MOTION TO REMAND WITH
INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff EPL Oil & Gas, LLC ("EPL"), through undersigned counsel, respectfully moves, pursuant to 28 U.S.C. § 1447(c), to remand this case back to the 173rd Judicial District, Henderson County, State of Texas (the "State Court"). For the reasons explained below, federal jurisdiction does not exist and this case should be remanded.

**BACKGROUND**

This action was initiated by EPL on May 19, 2022 by filing its *Verified Petition for Damages, Declaratory Judgment, and Injunction* in the 173rd Judicial District, Henderson County, State of Texas (the "State Court Action") against Trimont Energy (NOW), LLC and Whitney Oil & Gas, LLC (collectively, "Defendants"). R. doc. 1-4.

In its Petition, EPL alleges that Defendants breached certain obligations regarding performance bonds under a Purchase and Sale Agreement dated June 30, 2015 (the "PSA"). R. doc. 1-4 at ¶ 7. More specifically, the Petition alleges that Defendants breached their unconditional obligation to replace performance bonds in favor of Devon Louisiana Corporation in the aggregate amount of $35 million (defined as the "Devon Bonds") no later than June 30, 2018. R. doc. 1-4 at

¶¶ 7-12. Defendants were required to replace the Devon Bonds so that EPL could "terminate the Devon Bonds" on which EPL was the principal and Defendants would succeed to EPL's "obligations with respect to bonding obligations in favor of Devon Louisiana Corporation…" *Id.* at ¶ 8 (quoting PSA ¶ 7.08). By Defendants' own admission, they failed to do so. *See id.* at R. doc. 1-5 at p. 323 (4/19/22 Ltr. from Defendant Whitney Oil & Gas, LLC stating that it was unable to obtain a replacement bond).

Defendants were served with the Petition through their respective registered agents for service of process on May 20, 2022 (Trimont Energy (NOW), LLC) and May 23, 2022 (Whitney Oil & Gas, LLC), respectively. R. doc. 1 at ¶ 8.

On June 3, 2022, Defendants filed a *Notice of Removal* that effected removal of the State Court Action to this Court. R. doc. 1. The same day, Defendants filed a *Notice of Removal to Federal Court* in the State Court Action; that is the only filing to date by Defendants in the State Court. The only purported basis for this Court's subject matter jurisdiction stated in Defendants' Notice of Removal is "federal question" jurisdiction under 28 U.S.C. § 1331, on the basis of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1)(A) ("OCSLA").

For the reasons explained below, federal question subject matter jurisdiction does not exist in this Court under the OCSLA,[1] Accordingly, EPL files the instant motion to remand this action back to the State Court. Pursuant to 28 U.S.C. § 1447(c), a Motion to Remand may be

---

[1] Defense counsel has advised undersigned counsel that in July 2018 an attorney then representing EPL sent a ***draft*** federal district court complaint to defendants relating to defendants' failure to replace the Devon Bonds. That complaint was apparently never filed, and there was no court determination as to whether federal jurisdiction existed. At that time, EPL was under different ownership and had different counsel. But more importantly, no attorney and no party can create or destroy federal subject matter jurisdiction by draft complaint, consent, waiver, or any other way. The Fifth Circuit's two-part test, discussed below, not an attorney's draft complaint, is determinative.

filed within 30 days of the filing of a Notice of Removal, and the instant motion is filed within 30 days. In addition, there is no time limit for remand where, as here, there is no federal subject matter jurisdiction. Accordingly, this motion is timely filed.

## LAW AND ARGUMENT

### A. Law Applicable to Removal and Remand

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). They require a statutory basis on which to exercise jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Removal jurisdiction "raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Accordingly, it is strictly construed and any doubts are resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). The party invoking removal jurisdiction bears the burden of establishing federal jurisdiction. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997).

A defendant may remove a civil action if a federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). Thus, the question for this Court is whether it has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and the OCSLA. For the reasons explained below, it does not and the case should be remanded.

### B. The Fifth Circuit's Two-Part Test for Federal Jurisdiction under OCSLA

With respect to federal jurisdiction, the OCSLA provides as follows:

[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with ... any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals....

43 U.S.C. § 1349(b)(1)(A).

- 3 -

The Fifth Circuit uses a two-prong test to assess jurisdiction under the OCSLA: (1) whether "***the activities that caused the injury*** constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *See, e.g., In re Deepwater Horizon*, 745 F.3d 157, 162 (5th Cir. 2014) (quoting *EP Operating Ltd. P'ship*, 26 F.3d 563, 568-69 (5th Cir. 1994)) (emphasis supplied). For federal jurisdiction to lie, **both** prongs must be satisfied. *See Plains Gas Solutions, LLC v. Tenn. Gas Pipeline Co.*, 46 F. Supp. 3d 701, 706 (S.D. Tex. 2014) (because it determined the first prong of the two-part test was not met, "the Court does not need to reach the [second prong] question of whether the case arises from such an operation").

For the first prong, the "threshold question is what are the activities that caused the injury." *Bd. of Comm'rs of the Southeast La. Flood Prot. Auth'y v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 835 (E.D. La. 2014). Once the activities are identified, the next question is "whether those activities constitute an operation conducted on the OCS" for purposes of mineral exploration, development, or production. *Id*. at 836. The Fifth Circuit defines "operation" as "the doing of some physical act." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) (internal quotation marks and citations omitted). "Exploration, development, or production" respectively refer to the "the processes involved in searching for minerals on the OCS; preparing to extract them by, inter alia, drilling wells and constructing platforms; and removing the minerals and transferring them to shore." *Id. at* 154-55 (citing 43 U.S.C. § 1331(k)-(m)).

The second prong requires a "but-for connection" between the lawsuit and operations on the OCS, *i.e*., but-for operations on the OCS, would the lawsuit have arisen? *In re Deepwater Horizon*, 745 F.3d at 163. A court needs to reach the second prong "only after it has established that the activities that caused the injury constituted an operation on the OCS." *Bd. of*

*Comm'rs*, 46 F. Supp. 3d at 705. *See also, Plains Gas Solutions,* 46 F. Supp. 3d at 706 (not reaching second prong where first was not satisfied).

### C. An Attenuated or Tangential Relationship between an Injury and Activities on the OCS Does Not Meet the First Prong of the Two-Part Test

Critically, the first prong – whether the injury resulted from activities that constitute an operation on the OCS relating to mineral production – narrows the second, broader prong (the but-for test). As one court explained,

> [T]he "but for test" adopted by the Fifth Circuit is not limitless. At its margins, a blind application of this test would result in federal court jurisdiction over all state law claims even tangentially related to offshore oil production on the OCS. Defendants' argument that the "but for" test extends jurisdiction to any claim that would not exist but for offshore production lends itself to absurd results; under the Defendants' view, an employment dispute brought by an employee of an onshore processing facility would fall within the OCSLA because, but for the activities on the OCS, the facility and the employment relationship would not exist.

*Plains Gas Solutions,* 46 F. Supp. 3d at 704-05. As the Fifth Circuit recognized in *In re Deepwater Horizon*, "one can hypothesize a 'mere connection' between the cause of action and the OCS operation ***too remote to establish federal jurisdiction***." *In re Deepwater Horizon*, 745 F.3d at 163 (emphasis supplied).

That "too remote" scenario is not purely hypothetical. Indeed, several courts have found that, where the connection between a cause of action and OCS operations is too remote, OCSLA does not provide a basis for federal jurisdiction. In *Plains Gas Solutions*, *supra*, plaintiff brought contract and tort claims against three defendants in state court relating to pipeline contracts. Defendants removed, asserting federal jurisdiction under OCSLA. 46 F. Supp. 3d 701. To determine whether it had jurisdiction, the court identified five "activities" that allegedly injured plaintiff: (1) defendant Tennessee Pipeline's ("TP") assignment of a gas processing contract with plaintiff to another defendant, Kinetica; (2) Kinetica's closure of an onshore valve on a pipeline system; (3) TP and Kinetica's failure to provide volume and customer reports; (4) Kinetica's
- 5 -

misrepresentations of pipeline flow; and (5) defendant Targa's demand for deficiency payments from plaintiff. *Id.* at 705-06. The court noted that only one activity (the valve closure) involved a "physical act" that could constitute an "operation," and it had occurred onshore. *Id.* at 706. Thus, the first prong of the two-part test was not satisfied, and the court did not need to reach the second part, the "but-for" test. *Id.*

Similarly, in *Board of Commissioners of the Southeast Louisiana Flood Protection Authority v. Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d 808 (E.D. La. 2014), the plaintiff sued defendants alleging environmental damage caused by decades of oil and gas activities. The court applied the first prong of the two-part test by identifying the activities that allegedly caused injury. The court found plaintiff alleged injury from operations on Louisiana coastal lands and state waters, rather than on the OCS. Because the injuries arose from activities onshore and in state waters, the first prong was not met and federal jurisdiction was absent. *Id.* at 836-37. The court rejected defendants' argument that the activities on state lands and waters "facilitated oil and gas activities on the OCS," finding an "attenuated relationship between operations on the OCS and the conduct and injuries at issue in the litigation" was insufficient for jurisdiction. *Id.*

The court in *Jefferson Parish v. Equitable Petroleum Corp.*, No. 13-6714, 2015 WL 2372362 at \*6 (E.D. La. May 18, 2015) likewise found no OCSLA jurisdiction where plaintiff alleged defendants' onshore activities violated state law and caused environmental damage. The court rejected defendants' arguments that the onshore activities "directly support[e]d OCS operations," and that they would not have engaged in those onshore activities "but for oil and gas production activities on the O[]C[S]…." *Id.* Because the injury was not caused by activities on the OCS, the first prong was not met, the court did not need to apply the but-for test.

- 6 -

And, in *Robin v. Creighton-Smith*, 488 F. Supp. 3d 459 (E.D. La. 2020), the court had to determine whether it had OCSLA jurisdiction over a dispute over proceeds and management of an oyster lease. The lease had sustained damage from the Deepwater Horizon oil spill, resulting in defendant receiving a seven-figure settlement. Among other things, plaintiffs sought to recover the settlement proceeds based on defendant's alleged breach of an oral promise and a sublease of the lease to plaintiffs. *Id*. at 462. Even though the settlement funds only existed by virtue of operations on the OCS that led to an oil spill, the court found that plaintiff's claims were "***at best only tangentially related to such an [OCS] operation*** and do not come close to meeting the but-for test required to give rise to jurisdiction." *Id*. at 465 (citing 43 U.S.C. § 1349(b)(1) and *Bd. of Comm'rs of the Se. La. Flood Prot. Auth'y*, 29 F. Supp. 3d at 837) (emphasis supplied).

**D.**     **This Court Lacks Subject Matter Jurisdiction under OCSLA Because No "Activity" on the OCS Caused the Injury Alleged Here**

In assessing jurisdiction, this Court should begin its analysis with the first prong of the two-part test: whether the injury alleged resulted from "activities" that constitute "operations" (*i.e.*, physical acts) on the OCS "which involves exploration, development, or production of [] minerals." 43 U.S.C. § 1349(b)(1)(A). Here, the activity that caused injury is identified in the Petition. EPL alleges that Defendant undertook an unconditional obligation to replace $35 million in bonds (referred to as "Devon Bonds" as defined therein) "on or before June 30, 2018," but "neither Trimont nor Whitney has yet to replace the Devon Bonds." R. doc. 1-4 at ¶¶ 7-12.

As a result, EPL alleges it "will suffer a probable, imminent, and irreparable injury" because EPL's surety has demanded that EPL deposit millions of dollars as additional collateral for the Devon Bonds. *Id*. at ¶ 22. EPL further alleges its damages as "funds that EPL has and will have to forfeit or encumber to maintain bonds" as a result of Defendants' breach of their obligation to replace those bonds. *Id*. at ¶ 23.

Defendants' obligation to replace the Devon Bonds would not, and could not, be discharged on the OCS. No operation, and no physical act, on the OCS is required to obtain replacement bonds. Indeed, the injury resulted not from any "physical act" on the OCS or elsewhere, but from Defendants' inaction onshore, at their corporate headquarters (failing to obtain replacement bonds). Defendants' principal offices are in Texas and Louisiana, respectively. They could arrange replacement bonds from their onshore offices without assistance from anyone working on the OCS. Nor is any surety company from whom replacement bonds could be obtained based on the OCS. Moreover, the acts that are demanded (replacing the bonds) do not involve mineral development or production, or any operation or physical act on the OCS.

The only connection between the OCS and plaintiff's alleged injury is that the obligation to replace the Devon Bonds is one of many terms and conditions found in an APA relating to the sale of assets, only some of which are located on the OCS. Other assets transferred via the APA are onshore, or in state waters. *See* R. doc. 1-5, at p. 63 of 335 *et seq.* (listing state and federal leases and other assets). As in the jurisprudence discussed above, the thin connection to the OCS is too attenuated and remote to satisfy the first prong of the two-part test.

That conclusion is further bolstered by the fact that the bond replacement obligation is a post-closing obligation that the defendants were given three years to perform after the APA transaction closed and assets were transferred. R. doc. 1-5 (APA) at p. 25 of 335, ¶ 2.05 (defining "Effective Date" as June 30, 2015); p. 36 of 335, ¶ 7.08 (obligating Defendants "to obtain a replacement for the Devon Bonds on or before June 30, 2018…"); p. 39 of 335, ¶ 9.02 (providing that "Closing" will occur "contemporaneously with the execution and delivery of this Agreement, but no later than June 30, 2015"); p. 39 of 335, ¶ 9.02(a) (providing for execution of Assignment and Bill of Sale with respect to assets at Closing).

Since June 2015 – seven years ago – Defendants have owned and operated all the transferred assets. In the Petition, EPL is *not* seeking to unwind the APA, effect the transfer of any offshore assets, or assert an ownership interest or lien in any assets. Nor would the relief sought in the Petition interfere in Defendants' use or operation of those assets. Regardless of the outcome of the lawsuit, the assets will still belong to Defendants and they can continue to own and do with them as they please. EPL merely wants Defendants to discharge their post-closing obligation to replace the Devon Bonds.

### E. Defendants' Authorities Are Readily Distinguishable

Finally, the authorities cited by Defendants here are unavailing. Defendants cite *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988). R. doc. 1 at ¶ 7. That case is readily distinguishable. It involved a take-or-pay contract for natural gas produced from wells on the OCS, and the Fifth Circuit found OCSLA jurisdiction because "[e]xercise of take-or-pay rights … necessarily and physically has an immediate bearing on the production of the particular well, certain in the sense of the volume of gas actually produced." *Id.* at 1210.[2] By contrast, whether the Devon Bonds remain in place, or Defendants replace them, has no effect on production from Defendants' OCS assets.

Defendants also cite *Cox Operating, L.L.C. v. Expeditors & Production Services Co.*, 21-728, 2021 WL 2853060 (E.D. La. July 8, 2021). R. doc. 1 at ¶ 7. There, plaintiff sued two defendants in federal court, and the court denied defendants' motion to dismiss because it found OCSLA jurisdiction. As to one defendant, plaintiff's claim related to the validity of lien rights asserted against plaintiff's production from the OCS. That claim had a much more direct

---

[2] The court in *Board of Commissioners v. Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d at 836-37, discussed above, distinguished *Sea Robin Pipeline Co.*, *supra*, on this basis.

and stronger nexus to OCS activities than the (at best) remote, attenuated relationship between the injury and OCS activities at issue here.

As to the other defendant in *Expeditors & Production Services, supra*, it had a Master Services Agreement ("MSA") with plaintiff to provide onshore services to support plaintiff's OCS production. The court found that "the plain language of the MSA states that it governs the services [defendant] provides to [plaintiff] in connection with [plaintiff]'s offshore mineral production." *Id*. at *3. While those services were provided onshore, claims related thereto had a much more direct and stronger nexus to OCS production than the remote, tangential relationship between the alleged injury and OCS production at issue here.

F.   **The But-For Test Is Not Satisfied**

Finally, even if the first prong of the two-part test were met, jurisdiction would still not exist because the second prong – the but-for test – is not satisfied. The second prong requires the Court to ask whether the injury would have occurred but-for operations on the OCS. *Board of Comm'rs of the Se. La. Flood Prot. Auth'y*, 29 F. Supp. 2d at 837 (citing *Deepwater Horizon,* 745 F.3d at 163). As explained below, the dispute between the parties could have arisen even if no OCS assets had been transferred through the PSA.

The assets transferred via the PSA include assets located onshore and in state waters, in addition to assets on the OCS. The Devon Bonds at issue likewise relate to assets located onshore and in state waters, as well as on the OCS. The Devon Bonds were obtained by EPL's predecessor-in-interest, Energy Partners Ltd., in connection with its purchase of assets from Ocean Energy, Inc. via a Purchase and Sale Agreement dated January 26, 2000 (the "Ocean Energy PSA"). *See* the Declaration of Benjamin Marchive (the "Marchive Decl.") at ¶ 2 & Ex. 1 thereto. The Ocean Energy PSA obligated EPL's predecessor (Buyer) to post $50 million in bonds with Seller, Ocean Energy. *See* Ocean Energy PSA at ¶ 17.2.2. The bonds were required

> to secure all obligations of Buyer to be responsible for and comply with all duties and obligations of Seller with respect to the Assets, including any governmental request or requirements to plug, replug, and or/abandon any well, platform, pipeline, structure, piling, foundation or other related facility existing on the Assets, including the removal of all or any structure, wells, [etc.].

*Id*. The Devon Bonds were obtained by EPL to fulfill part of the $50 million bond requirement in the Ocean Energy PSA. *See* Marchive Decl. at ¶ 2.

The assets transferred via the Ocean Energy PSA include leases located onshore in Louisiana and in Louisiana state waters, in addition to federal leases. *See* Ocean Energy PSA at Ex. A-1 (items 1-3 and 8-16 (state offshore leases) and items 18-41 (onshore leases in Louisiana)). Because the Devon Bonds – whose replacement is the basis of the instant dispute – were obtained to protect the Seller (Ocean Energy) from exposure relating to ***all*** transferred assets, those bonds do not exist solely because of activities on the OCS. Even if no assets on the OCS were transferred via the Ocean Energy PSA, the Seller would surely have still demanded protection from exposure relating to transferred assets onshore and in Louisiana state waters.

The assets acquired by EPL's predecessor via the Ocean Energy PSA are many of the same assets EPL subsequently transferred to Defendants via the PSA. *Compare* Ocean Energy PSA at Ex. A-1 *with* R. doc. 1-5 at Ex. A.[3] Indeed, that explains why Defendants were obligated to replace the Devon Bonds (whereby EPL's predecessor had protected its Seller, Ocean Energy from exposure relating to the transferred assets) in the first place; since Defendants were acquiring the assets, they were to relieve EPL of the onus of protecting EPL's predecessor-in-title, Ocean Energy, from exposure relating to those assets.

---

[3] For example, most of the state leases listed at R. doc. 1-5, p. 63 of 335 and the onshore private leases listed thereafter are the same ones listed in Ex. A-1 to the Ocean Energy PSA, at items 1-3 and 8-16 (state offshore leases) and 18-41 (onshore leases in Louisiana).

All of this supports the conclusion that the instant dispute relating to Defendants' breach of their obligation to replace the Devon Bonds could have arisen even if none of the transferred assets were located on the OCS.  *Cf. Board of Comm'rs of the Se. La. Flood Prot. Auth'y*, 29 F. Supp. 2d at 837 (where plaintiff alleged injury from defendants' activities on state lands and waters, "the Court finds that Plaintiff's injury would have occurred regardless of operations on the OCS, and the but-for test is not satisfied.").  If one disregards OCS assets, the APA still transferred assets onshore and in state waters.  As to those non-OCS assets, predecessors in title would still have exposure, EPL's predecessor-in-title (Ocean Energy) would surely have required its buyer to obtain bonds to protect against Ocean Energy's exposure, and EPL would still need to, in turn, shift that burden to its buyer (Defendants).  And, Defendants could have breached their obligation to replace bonds acquired to protect Ocean Energy from exposure relating only to non-OCS assets, and the parties would still end up in litigation.

Accordingly, the second prong of the two-part test is not met, and there is no OCSLA jurisdiction for that additional reason.

## CONCLUSION

In this action, EPL alleges injury as a result of Defendants' breach of a post-closing obligation to replace bonds that were posted by EPL.  The injury did not occur in the course of any activity or physical act on the OCS.  Under Fifth Circuit authority, the first prong of the applicable two-part test is thus not satisfied.  In addition, because the Devon Bonds relate to a variety of assets that are located onshore, in state waters, and in federal (OCSLA) waters, the second prong – the but-for test – is also not satisfied because a lawsuit could have arisen even if the deal did not involve any OCS assets.  Accordingly, federal question jurisdiction under the Outer Continental Shelf Lands Act does not exist.  No other basis for subject matter jurisdiction is alleged.  This case should be remanded to state court.

WHEREFORE, Plaintiff EPL Oil & Gas, LLC prays that this Court enter an Order remanding this case back to the 173rd Judicial District, Henderson County, Texas, and for any and all such other and further relief to which Plaintiff may be entitled.

Dated: June 21, 2022

Respectfully submitted,

**MARTIN R. BENNETT, P.C.**

By: */s/ Martin R. Bennett*

Martin R. Bennett (TX Bar No. 795037)
First State Bank Building
E Corsicana St. #302
Athens, TX 75751
Telephone: (903) 675-5151
Fax: (903) 677-4950
Email: mbennett@ksbpc.com

- and -

**STONE PIGMAN WALTHER WITTMANN LLC**
Andrew D. Mendez (TX Bar No. 00797066)
(will apply for admission to E.D. Tex.)
Bryant S. York (TX Bar No. 24084866)
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
Email: amendez@stonepigman.com
byork@stonepigman.com

*Attorneys for Plaintiff, EPL Oil & Gas, LLC*

## CERTIFICATE OF SERVICE

I certify that on June 21, 2022, I served upon all counsel of record a true and correct copy of this motion by filing it with the court's CM/ECF system.

*/s/ Martin R. Bennett*

## CERTIFICATE OF CONFERENCE

I certify that (1) counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and (2) the motion is opposed. The conference was held by phone on June 21, 2022 between Andrew D. Mendez (for Plaintiff) and LeElle B. Slifer (for Defendants). The parties disagree as to whether federal jurisdiction exists and the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Martin R. Bennett*