IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EPL OIL & GAS, LLC, | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CASE NO. 6:22-CV-208-JDK |
| TRIMONT ENERGY (NOW), LLC and WHITNEY OIL AND GAS, LLC, | | |
| Defendants. | | |

# **TRIMONT AND WHITNEY'S OPPOSITION TO EPL'S MOTION TO REMAND**

The Court should deny EPL's motion to remand because the Court has subject-matter jurisdiction under the broad jurisdictional provision of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1349(b)(1)(A).

## INTRODUCTION

This contract dispute arises out of an agreement for the purchase of outer Continental Shelf (OCS) leases by Trimont and Whitney from EPL (the Purchase and Sale Agreement or PSA). EPL asserts that the PSA imposes on Trimont and Whitney bonding obligations for the decommissioning and abandonment of wells, property, and equipment on federal leases situated on the OCS. But for the operations and leases on the OCS, the parties' relationship would have never materialized, the parties would have never entered into the PSA, and this dispute would have never arisen. Therefore, under prevailing Fifth Circuit precedent, OCSLA jurisdiction attaches, and the Court should deny EPL's motion to remand.

It is unsurprising, therefore, that at one point EPL agreed that OCSLA covered this dispute. EPL previously sent Trimont and Whitney a draft complaint asserting that its claims were covered by OCSLA. That complaint makes nearly identical allegations as those EPL made in its state-court petition. The parties are the same, the source of the purported bonding obligations is the same, and the theories of liability are the same. The only difference is EPL's newfound desire to litigate in Henderson County state court—a jurisdiction with no apparent nexus to the claims at hand.

Disclaiming its prior position on OCSLA's applicability to this dispute, EPL now invites this Court to rely on just the sort of overly narrow interpretation of OCSLA jurisdiction the Fifth Circuit has routinely rejected. EPL proposes a jurisdictional test that (a) is divorced from the statutory text, and (b) would impose a nonexistent requirement that the alleged injury occurred as a result of activity on the OCS. But the statute includes no such language and several courts have declined to interpret OCSLA in such a manner. Consistent with its broad reach, OCSLA's jurisdictional provision covers any case "arising out of, or in connection with" any "operation" conducted on the OCS. This is such a case.

Because the Court has subject-matter jurisdiction under OCSLA, the Court should deny EPL's motion to remand.

## BACKGROUND

EPL sued Trimont and Whitney in Texas state court for purported breaches of bonding obligations in a PSA for the purchase of leases on the OCS. ECF No. 1-4. EPL alleges that Trimont and Whitney breached the PSA by failing to timely replace bonds—largely regulated by the U.S. Bureau of Ocean Energy Management (BOEM) and the U.S. Bureau for Safety and Environmental Enforcement (BSEE)—that cover decommissioning and abandonment operations on the OCS. *Id.* at ¶¶7–15.

Over three years ago, EPL sent Trimont and Whitney a demand letter containing breach-of-contract allegations that mirror the allegations EPL made in its state-court petition here. *See* Exhibit A, Demand Letter & Draft Federal-Court Complaint. In that demand letter, EPL alleged that Trimont and Whitney breached

2

the very same provisions of the very same PSA in exactly the same manner as it alleges today. *Id.* EPL also attached a draft complaint it intended to file in federal court and which invoked OCSLA subject-matter jurisdiction:

> UNITED STATES DISTRICT COURT
> EASTERN DISTRICT OF LOUISIANA
>
> EPL OIL & GAS, INC.                           CIVIL ACTION:
>
>                                               SECTION:
> VERSUS
>                                               JUDGE:
> WHITNEY OIL & GAS, LLC AND
> TRIMONT ENERGY (NOW), LLC                     MAGISTRATE JUDGE:
>
> **COMPLAINT FOR MANDATORY INJUNCTION
> COMPELLING SPECIFIC PERFORMANCE**
>
> Plaintiff, EPL Oil & Gas, Inc., for its Complaint for Mandatory Injunction Compelling Specific Performance, with respect, represents:
>
> **THE PARTIES**
>
> 1. Plaintiff, EPL Oil & Gas, Inc. ("Plaintiff" or "EPL"), is a Delaware corporation with its principal place of business in Texas.
>
> 2. Defendant, Whitney Oil & Gas, LLC ("Whitney"), is a Louisiana limited liability company authorized to do and doing business in Louisiana.
>
> 3. Defendant, Trimont Energy (NOW), LLC ("Trimont"), is a Texas limited liability company authorized to do and doing business in Louisiana.
>
> **JURISDICTION AND VENUE**
>
> 4. ==This Court has jurisdiction over the subject matter of this action pursuant to 43 U.S.C. § 1349(b)(1) of the Outer Continental Shelf Lands Act ("OCSLA") as this action relates to leases located in federal waters off the coast of Louisiana in the Gulf of Mexico.== Specifically, EPL's claims against Whitney and Trimont (collectively, "Defendants") arise out of or in connection with a contract concerning assets located on the outer continental shelf leases, including federal leases BLM 022917, OCS 00352, OCS 00693, OCS 00353, OCS 00694, and OCS 697 (hereinafter, "OCS leases"), and ultimately concerning bonding obligations for decommissioning and abandonment associated with the wells, property and equipment situated on submerged lands covered by the OCS leases.

*Id.* Consistent with EPL's draft complaint and the PSA's unquestionable nexus to OCS leases and operations, Trimont and Whitney timely removed the case under OCSLA. ECF No. 1.

After removal, Trimont and Whitney moved to dismiss and compel arbitration based on the broad, binding, and enforceable arbitration provision in the PSA. ECF No. 2. But over two weeks after Trimont and Whitney moved to dismiss and compel arbitration, EPL did an about-face on OCSLA and moved to remand this case to state court. ECF No. 7. Despite both its prior position on jurisdiction and the broad reach of OCSLA, EPL now contends that the Court lacks subject-matter jurisdiction. *Id.* This is merely gamesmanship and forum-shopping.[1] For the reasons below, the Court should deny remand, dismiss this case, and compel arbitration.[2]

## ARGUMENT

**I.    Congress authorized broad and straightforward federal jurisdiction through OCSLA.**

As with any statute, an analysis of OCSLA starts with the text itself. *Cf. Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022) ("When interpreting statutes, we begin with the text's plain meaning, ascertained by reference to the particular statutory language at issue, as well as the language and design of the statute as a whole." (internal quotation marks omitted)). The relevant text of OCSLA follows:

---

[1] It is unclear to Trimont and Whitney what connection, if any, Henderson County has to the parties or claims at issue, other than perhaps that the family of the CEO of EPL's parent corporation owns property and other assets in Henderson County.

[2] Trimont and Whitney's reply in support of their motion to dismiss and compel arbitration explains why the Court can and should grant the motion to dismiss and compel arbitration before considering remand. ECF No. 11 at 2–6. Should the Court grant Trimont and Whitney's motion, the Court may deny EPL's motion as moot.

4

> [T]he district courts of the United States shall have jurisdiction of **cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf** which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals[.]

43 U.S.C. § 1349(b)(1)(A) (emphasis added). Under the plain text of the statute, jurisdiction turns on the link between the case and the on-OCS operation; it does not require that the injury-causing act take place on the OCS, as EPL mistakenly suggests in its motion. *See id.*; *cf. Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988) (affirming denial of remand and finding OCSLA jurisdiction in contract dispute involving alleged breaches that did not occur on the OCS); *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (finding OCSLA jurisdiction in contract dispute involving alleged breaches that did not occur on the OCS).

The Fifth Circuit has repeatedly interpreted OCSLA's jurisdictional provision in a "straightforward and broad" manner. *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (citing *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996)); *accord, e.g., Texaco Expl. & Prod., Inc. v. AmClyde Eng'd Prods. Co.*, 448 F.3d 760, 770 (5th Cir. 2006) ("As stated earlier, this Circuit has consistently read OCSLA's jurisdictional grant broadly."); *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) ("The reach of OCSLA is broad[.]").

The Fifth Circuit has also broadly defined particular terms in the statute. *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994). For example, the statutory terms "exploration," "development," and "production"

5

"encompass the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources." *Id.* And the term "operation" means "the doing of some physical act on the OCS," including "the cessation of physical acts undertaken upon the OCS." *Id.* (citing *Sea Robin*, 844 F.2d at 1207).

That "broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA." *EP Operating*, 26 F.3d at 569. And such a reading coheres with "Congress['] inten[tion] for the 'judicial power of the United States to be extended to the entire range of legal disputes that it knew would arise relating to resource development on the Outer Continental Shelf.'" *Id.* (quoting *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985)).

Using that broad interpretation, the Fifth Circuit has observed that "any dispute that alters the progress of production activities on the OCS . . . was intended by Congress to be within the grant of federal jurisdiction contained in § 1349." *Sea Robin*, 844 F.2d at 1210; *accord EP Operating*, 26 F.3d at 570 (finding OCSLA jurisdiction because resolution of ownership rights in offshore facilities "would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally[] owned resources").

## II. This dispute would not have arisen but for on-OCS abandonment and decommissioning activities, meeting the Fifth Circuit requirement for OCSLA jurisdiction.

This Court has OCSLA jurisdiction under the Fifth Circuit's well-established but-for test. The Fifth Circuit has consistently stated that OCSLA requires only a

6

but-for connection between the dispute and on-OCS operations to support federal jurisdiction. *See, e.g., Deepwater Horizon*, 745 F.3d at 163 ("this court deems § 1349 to require only a 'but-for' connection"); *Hufnagel v. Omega Serv. Indus.*, Inc., 182 F.3d 340, 350 (5th Cir. 1999) (applying but-for test); *Tenn. Gas Pipeline*, 87 F.3d at 155 (same); *Recar*, 853 F.2d at 369 (same); *see also, e.g., Apache Corp v. GlobalSantaFe Drilling Co.*, 832 F. Supp. 2d 678, 690 (W.D. La. 2010) (applying but-for test and finding OCSLA jurisdiction); *EPS Logistics Co. v. Cox Operating, L.L.C.*, No. 6:21-CV-1003, 2021 WL 2698209, at *3 (W.D. La. June 30, 2021) (same). Trimont and Whitney easily meet both prongs of the but-for test.

### A. This case satisfies the first prong of the Fifth Circuit's test because the purported bonding requirements cover operations on the OCS.

The first step under the but-for test requires identifying an on-OCS "operation." *See EP Operating*, 26 F.3d at 567–68. Here, the relevant operation consists of the decommissioning and abandonment activity on wells located on federal leases situated on the OCS and covered by the federally mandated bonds. *See* Exhibit C, Declaration of J. Hunter Coates, at ¶ 6 (identifying significant decommissioning and abandonment liabilities associated with wells located on the OCS).

Abandonment activity qualifies as an "operation" under OCSLA because it involves "the cessation of physical acts undertaken upon the OCS." *EP Operating*, 26 F.3d at 569 (citing *Sea Robin*, 844 F.2d at 1207). Indeed, "[a]ctivities relating to the plugging and abandoning of oil and gas facilities on the OCS constitute

7

operations under OCSLA."[3] *Total E&P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*, No. H-16-2671, 2016 WL 6037242, at *2 (S.D. Tex. Oct. 14, 2016). There is no question that federal jurisdiction covers abandonment and decommissioning of wells on the OCS; otherwise, BOEM and BSEE would not regulate the bonds necessary to assure compliance.

### 1. EPL reads the first prong too narrowly.

Despite the overwhelming evidence and precedent showing that this case relates to operations on the OCS, EPL and its counsel, Stone Pigman, now take a contrary position to the one EPL's corporate parent—Cox, also represented by Stone Pigman—took in *EPS Logistics*. *See* 2021 WL 2698209, at *1–2. In that case, Cox removed a petition for suit on open account under OCSLA even though the "petition made no mention of the Outer Continental Shelf or the exploration for or production of oil, gas, or other minerals" and merely alleged that Cox had failed to pay an invoice "for the provision of lease operating services." *Id.* at *1.

Following removal, the district court questioned subject-matter jurisdiction and directed briefing on the issue. *Id.* Cox responded by urging the district court to apply the same but-for test used by the Fifth Circuit and discussed above. *See* Exhibit B, Cox Memorandum Supporting Subject-Matter Jurisdiction. The district court agreed

---

[3] As the Fifth Circuit noted in *EP Operating*, "federal regulations mandate that the offshore facilities will eventually have to be cleared off the OCS." *Id.* at 567. The court also explained that "[o]ne concern of the OCSLA is that the resources of the OCS be developed in an environmentally safe manner." *Id.* (citing *Laredo*, 754 F.2d at 1227). And for this reason, "federal regulations require that when a lease expires or is abandoned, the equipment must be properly cleared from the OCS." *Id.* (citing 30 C.F.R. § 250.112(i)). Here too, BOEM requires lessees to obtain bonds to protect the government from incurring costs associated with the decommissioning and abandonment of OCS leases. *See* 30 C.F.R. §§ 556.900(a)–(d), 556.901(d).

8

with Cox and, after applying the Fifth Circuit's but-for test, concluded that OCSLA jurisdiction existed because "Cox would not have entered into [the] contract[,] and the dispute regarding the payment of [the] invoices would not have arisen" but for Cox's on-OCS operations. *EPS Logistics*, 2021 WL 2698209, at *3 (citing *EP Operating*, 26 F.3d at 569).

In this case, however, EPL asks the Court to endorse a narrow and atextual reading of OCSLA rather than applying the but-for test. *See* ECF No. 7 at 4. Without once acknowledging the Fifth Circuit's repeated pronouncements on the breadth of OCSLA jurisdiction, EPL contends that OCLSA jurisdiction can only exist when, under the first prong of the but-for test, the injury-causing activity constitutes an "operation" on the OCS. *Id.* That is simply wrong and misreads *Deepwater Horizon*.

As an initial matter, nothing in OCSLA requires that the injury-causing activity constitute an operation on the OCS. *See* 43 U.S.C. § 1349(b)(1)(A). The text requires only (1) a "case[] or controvers[y]"; (2) that "aris[es] out of, or in connection with"; (3) "any operation conducted on the outer Continental Shelf." *Id.* Fighting the text, EPL relies on one clause from *Deepwater Horizon* and a smattering of district court opinions to support its argument that the injury-causing activities must constitute operations on the OCS. That reliance is misplaced.

*Deepwater Horizon* involved claims stemming from the Deepwater Horizon oil spill in the Gulf of Mexico and the resulting pollution-related loss of aquatic life and wildlife. And so, although *Deepwater Horizon* stated that "[c]ourts **typically** assess" OCSLA jurisdiction under a two-part test that first asks whether "the activities that

9

caused the injury constituted an 'operation'" conducted on the OCS, that statement is directed at other cases involving physical injuries. *See Deepwater Horizon*, 745 F.3d at 163 (emphasis added).

Importing that injury-related articulation to the commercial context, as EPL urges, would depart sharply from Fifth Circuit precedent and conflicts with *Deepwater Horizon* itself. Indeed, no matter how a district court or two may have misinterpreted *Deepwater Horizon*, the Fifth Circuit has not applied the *Deepwater Horizon* articulation of the first prong to a commercial dispute like this one. *See, e.g.*, *EP Operating*, 26 F.3d at 569–70 (partition action); *Sea Robin*, 844 F.2d at 1203 (contract dispute); *United Offshore*, 899 F.2d at 407 (contract dispute). And if *Deepwater Horizon*'s articulation of the first prong applied outside the physical-injury context, then the Fifth Circuit's opinions in *EP Operating*, *Sea Robin*, and *United Offshore*—none of which involved on-OCS injury-causing activity—would have come out the other way.

And if there was any doubt about *Deepwater Horizon*'s application of the but-for test, the opinion itself could not be more clear: "[T]his court deems § 1349 to require only a 'but for' connection." *Id.* (citing *Hufnagel*, 182 F.3d at 350; *Tenn. Gas Pipeline*, 7 F.3d at 155; *Recar*, 853 F.2d at 369). Still further, the Fifth Circuit case that the panel in *Deepwater Horizon* relied on—*EP Operating*—held that all that is required under the first part of the but-for test is an "operation" on the OCS. *EP Operating*, 26 F.3d 567–69 (finding first that "there is an 'operation' on the OCS in this case" before addressing whether the action "'arises out of, or in connection with'

10

that operation) (quoting 43 U.S.C. § 1349(b)(1)). This Court should therefore reject EPL's invitation to treat a single sentence from *Deepwater Horizon* as though it were part of OCSLA. *Cf. Mays v. Chevron Pipe Line Co.*, 968 F.3d 442, 448 (5th Cir. 2020) (chiding parties for "parsing the opinion as if it were a statute").

Another recent opinion involving EPL's corporate parent shows how the *Deepwater Horizon* test should operate in contract cases like the present dispute. *See Cox Operating, L.L.C. v. Expeditors & Prod. Servs. Co.*, No. 21-728, 2021 WL 2853060, at *2–4 (E.D. La. July 8, 2021). In *Cox Operating*, Cox brought a breach-of-contract action against oil-and-gas companies in federal court invoking OCSLA jurisdiction. *Id.* at *1. Cox alleged the companies breached a master services agreement by allowing third-party liens to be placed on Cox's property even though none of the alleged breaches constituted an "operation" on the OCS. *See id.* Disputing OCSLA's application, the companies moved to dismiss for lack of subject-matter jurisdiction. *Id.* at *2. The court denied the motion and found both prongs of *Deepwater Horizon* satisfied. *Id.* at *4. In so doing, the court correctly interpreted the first prong to require only that the "underlying activity in th[e] case constitute[d] an operation conducted on the OCS," not that the breach itself constituted an operation on the OCS. *Id.* at *3 (citing *EP Operating*, 26 F.3d at 567). This Court should apply that same interpretation here.

Correctly articulated, *Deepwater Horizon*'s two-part test only confirms that OCSLA jurisdiction exists here. As *Cox Operating* makes clear, the first prong merely requires that the dispute arise out of on-OCS operations. *Id.* And those operations

11

exist here: the PSA's bonding requirement relates to abandonment and decommissioning activities associated with wells, property, and equipment on federal leases situated on the OCS. *See* Exhibit C, Declaration of J. Hunter Coates, at ¶¶ 4, 6.

EPL points to a narrow set of district-court decisions that supposedly support its cramped interpretation of OCSLA's broad jurisdiction provision, but each is either inapposite, unpersuasive, or incorrect as a matter of law. And none binds this Court.

Three of the four district-court decisions ignored the text of OCSLA and the Fifth Circuit precedent above in reaching their mistaken conclusions that the **text** of the statute requires that the injury-causing activities constitute an operation on the OCS. *See Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 835–36 (E.D. La. 2014); *Plains Gas Solutions, LLC v. Tenn. Gas Pipeline Co.*, 46 F. Supp. 3d 701, 706–07 (S.D. Tex. 2014); *Jefferson Parish v. Equitable Petrol. Corp.*, 13-6714, 2015 WL 2372362, at *5–6 (E.D. La. May 18, 2015). As noted above, such holdings conflict with Fifth Circuit precedent and the text of § 1349.

EPL's fourth and final opinion is distinguishable on its facts. *See Robin v. Creighton-Smith*, 488 F. Supp. 3d 459 (E.D. La. 2020). That case involved a kitchen-sink removal (on no fewer than four statutory grounds) by a defendant in a contract dispute involving oyster leases situated entirely in St. Bernard Parish, Louisiana. *Id.* at 462. The removal was meritless, and the case involved no mineral development or exploration or "operation" of any sort and involved no connection at all to the OCS.

*Id.* at 464–65. Devoting just one paragraph to OCSLA jurisdiction, the district court properly remanded the case. *Id.* at 465.

### B. This case satisfies the second prong of the Fifth Circuit's test because but for the OCS leases, there would be no dispute.

The second step under the but-for test requires determining whether the dispute would have arisen but for the on-OCS "operation." Here, absent the on-OCS leases' inclusion in the PSA, and therefore BOEM's requirement that lessees hold certain bonds to assure proper decommissioning and abandonment activities on the OCS, the purported bonding obligation would not have existed, the parties would have never entered the PSA, and this dispute would have never arisen. *See* Exhibit C, Declaration of J. Hunter Coates, at ¶ 7.

EPL argues there can be no but-for connection because the bonding obligation would have existed even if the PSA transferred only onshore assets, but it cites no support for this statement. And its premise is wrong in any event. EPL's alleged injury stems from Trimont and Whitney's purported failure to comply with bonding obligations in **this** PSA—which contains assets both on and off the OCS—and not the obligations in some hypothetical contract devoid of OCS assets. Besides, the PSA's alleged bonding obligation is not divisible in the way EPL imagines: There is a singular bonding obligation that attaches to all the leases transferred under the PSA—those on and off the OCS. *See* Exhibit C, Declaration of J. Hunter Coates, at ¶¶ 4–6. EPL cannot segregate the alleged bonding obligation tied to the OCS leases from that tied to the onshore leases. *Id.* at ¶¶ 4–6. Thus, one can neither "disregard[] [the] OCS assets" transferred via the PSA nor merely assume that the bonding

13

obligation would have existed even if there were no OCS leases listed, as EPL incorrectly urges. *See* ECF No. 7 at 11–12.

Further, it is surprising that EPL now argues for such a narrow interpretation of the second prong given that its parent, Cox, took the opposite position when it sought OCSLA jurisdiction in *Cox Operating*. *See* 2021 WL 2853060, at *2–4. In that case, the district court prefaced its second-prong analysis by properly describing the but-for test as a "liberal causation standard" under which "the Fifth Circuit has found jurisdiction . . . in a number of contract-related disputes even though the dispute is 'one step removed from the actual transfer of minerals to shore.'" *Id.* at *3 (quoting *Sea Robin*, 844 F.2d at 1207). The court then turned to analyzing Cox's claims for breach of contract arising from a defendant's placement of liens on Cox's assets. *Id.* Rejecting a defendant's argument that the but-for test was not met because that defendant "only performed land-based services for Cox," the district court concluded that Cox's contract claim satisfied *Deepwater Horizon*'s second prong because "the parties would not have entered into the contract but for Cox's OCS operations." *Id.*

The present dispute presents an even stronger connection to OCS operations than that in *Cox Operating*. While the defendant in that case performed only land-based services, here the federal bonds directly cover wells on the OCS. Put another way, neither the PSA nor its purported bonding obligation would have existed absent the abandonment and decommissioning activities on the OCS, unquestionably satisfying *Deepwater Horizon*'s second prong.

14

Because this contractual-bonding dispute would never have arisen but for on-OCS abandonment and decommissioning activities covered by the bonds, OCSLA jurisdiction exists under the Fifth Circuit's well-established but-for test. *Accord, e.g.*, *Apache Corp*, 832 F. Supp. 2d at 690 (applying but-for test and finding OCSLA jurisdiction); *EPS Logistics*, 2021 WL 2698209, at *3 (same).

## CONCLUSION

Trimont and Whitney have met their burden of showing that OCSLA jurisdiction exists and that removal was proper. This dispute would not have arisen but for on-OCS abandonment and decommissioning activities. The Court should therefore deny EPL's remand motion, compel arbitration, and dismiss this case.

Dated: July 6, 2022

Respectfully submitted,

*/s/ LeElle B. Slifer*
Walter M. Berger
Texas Bar No. 00798063
cberger@winston.com
Brandon W. Duke
Texas Bar No. 24094476
bduke@winston.com
**WINSTON & STRAWN LLP**
800 Capitol St., Suite 2400
Houston, Texas 77002
(713) 651-2600 – Telephone
(713) 651-2700 – Facsimile

LeElle B. Slifer
Texas Bar No. 24074549
lslifer@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
(214) 453-6500 – Telephone
(214) 453-6400 – Facsimile

***Counsel for Defendants Trimont Energy (NOW), LLC and Whitney Oil & Gas, LLC***

## CERTIFICATE OF SERVICE

I certify that on July 6, 2022, I served upon all counsel of record a true and correct copy of this opposition by filing it with the Court's CM/ECF system.

*/s/ LeElle B. Slifer*
LeElle B. Slifer