# Exhibit B

# Cox Memorandum Supporting Subject-Matter Jurisdiction

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

EPS LOGISTICS CO., ET AL
     Plaintiff,                      *    CIVIL ACTION NO. 6:21-cv-01003
                                     * 
VERSUS                           *    JUDGE SUMMERHAYS
                                     * 
COX OPERATING, L.L.C.            *    MAGISTRATE JUDGE HANNA
     Defendants.                 * 
                                     * 
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   *

### MEMORANDUM SETTING FORTH FACTS SUPPORTING
### FEDERAL SUBJECT-MATTER JURISDICTION

Defendant, Cox Operating, L.L.C. ("Cox"), hereby submits this Memorandum Setting Forth Facts Supporting Federal Subject-Matter Jurisdiction, in accordance with this Court's *Sua Sponte* Jurisdictional Briefing Order (R. Doc. 13). This Court has jurisdiction over this dispute under the broad jurisdictional grant of the Outer Continental Shelf Lands Act (OCSLA), specifically 43 U.S.C. § 1349(b)(1)(A).

### I.     SUMMARY OF THE ARGUMENT

Because the relationship between Cox and Plaintiffs EPS Logistics Company, Inc. ("EPS Logistics") and Expeditors & Production Services Company ("EPS Production") would never have materialized or endured if not for Cox's extensive offshore operations in the Gulf of Mexico, and because the services provided by the Plaintiffs directly relate to Cox's offshore operations, this Court has subject matter jurisdiction under OCSLA.

The Fifth Circuit has repeatedly emphasized the breadth of federal subject matter jurisdiction conferred by 43 U.S.C. § 1349 over the "entire range of legal disputes that it knew would arise relating to resource development on the Outer Continental Shelf." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (quoting *Laredo Offshore*

1

*Constructors, Inc. v. Hunt Oil Co*., 754 F.2d 1223, 1227 (5th Cir. 1985)); *see Amoco Production Co. v. Sea Robin Pipeline Co*., 844 F.2d 1202, 1206 (5th Cir. 1988). Anything more than a "mere connection" with the exploitation of resources on the Outer Continental Shelf suffices for the Court to exercise jurisdiction under 43 U.S.C. § 1349.

As the exhibits attached to this Memorandum demonstrate, Cox retained EPS Logistics to perform dock and dispatching services after its acquisition from Chevron five years ago of a number of hydrocarbon-producing assets in the Gulf of Mexico, including wells, platforms, caissons and other offshore structures, and has continued to use EPS's services since. Moreover, the exhibits Plaintiffs attach to their Petition clearly reference wells, pipelines, and platforms located on federal eases in Outer Continental Shelf waters. The alleged work for which EPS seeks payment consists of goods and equipment delivered to offshore facilities, and the services directly assisted Cox in its offshore operations. Accordnigly, there exists a sufficient nexus between the subject matter of the Plaintiffs' Petition and operations on the Outer Continental Shelf to confer subject matter jurisdiction on this Court under 43 U.S.C. § 1349.

## II.   APPLICABLE LAW

### A.   Removal to Federal Court

An action brought in state court is removable to federal court if it "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1441(c)(1)(A). The party invoking federal subject matter jurisdiction has the burden of establishing it. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Jurisdictional facts are determined at the time of removal. *Louisiana v. Am. Nat'l Prop. & Cas. Co*., 746 F.3d 633, 635 (5th Cir. 2014).

1301488v.2

**B.      Fifth Circuit Courts have Broadly Construed OCSLA's Jurisdictional Grant**

The Fifth Circuit and courts within it have stressed that the existence of *any* nexus between an underlying dispute and the exploitation of resources on the Outer Continental Shelf typically suffices for a federal district court to exercise subject matter jurisdiction.

The provision of OCSLA addressing the jurisdiction of federal district courts over disputes involving activities on the Outer Continental Shelf, 43 U.S.C. § 1349(b)(1)(A), provides:

> Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies **arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals,** or (B) the cancellation, suspension, or termination of a lease or permit under this Act. Proceedings with respect to any such case or controversy may be instituted **in the judicial district in which any defendant resides or may be found,** or in the judicial district of the State nearest the place the cause of action arose.[1]

"The Fifth Circuit has interpreted this language as straightforward and broad." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (citing *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994)).  The Fifth Circuit has specifically found that a "broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA." *EP Operating*, 26 F.3d at 569.  The terms "operation," "exploration," "development," and "production," are "defined broadly in the statutes to encompass the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and

---

[1]      (Emphasis added).  The exceptions in subsection (c) are not applicable to the instant dispute.

maintenance of facilities to produce those resources." *Id.* at 568. As the Fifth Circuit explained, "Section 1349 confers upon the federal District Courts jurisdiction to hear and determine certain disputes which Congress anticipated that **oil and gas leases on the OCS and operations thereunder might generate**." *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1206 (5th Cir. 1988) (emphasis added).

The Fifth Circuit employs a "but for" test to determine whether jurisdiction arises under 43 U.S.C. § 1349(b)(1). *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988). If the plaintiff would not have suffered the alleged injury **but for** activities "arising out of, or in connection with, any … operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or … the cancellation, suspension, or termination of a lease or permit under this Act," federal district courts may exercise subject matter jurisdiction over the dispute.

For example, in *in re Deepwater Horizon*, a number of parishes argued that the contamination they complained of arose in state waters and that a "mere connection" to oil production activities on the OCS was "insufficient to meet the jurisdictional test." 745 F.3d at 163. Similarly to Defendants here, the parishes maintained that their statutory wildlife claims "have no effect on the 'efficient exploitation of resources from the OCS,' nor do they 'threaten the total recovery of federally-owned resources.'" *Id.* The Fifth Circuit rejected this argument, explaining:

> **Even though one can hypothesize a "mere connection" between the cause of action and the OCS operation too remote to establish federal jurisdiction, this court deems § 1349 to require only a "but-for" connection.** *See, e.g., Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999) (applying the "but-for" test and finding § 1349 jurisdiction where a worker on a stationary drilling platform in the OCS was injured); *Tenn. Gas Pipeline*, 87 F.3d at 155

4

(using "but-for" test to find jurisdiction when a boat collided with a platform, even though the accident was argued to be a "navigational" error and the mineral operation in question did nothing to cause the accident); *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (applying OCSLA to a personal injury suit when a platform worker was injured because a rope broke and caused him to fall to the deck of an adjacent transport vessel). **The but-for test does not include a purposive element as the Parishes advocate.** It is undeniable that "the oil and other contaminants would not have entered into the State of Louisiana's territorial waters 'but for' [Appellees'] drilling and exploration operation."… This is not, in short, a challenging case for asserting original federal jurisdiction, and therefore removal jurisdiction, under OCSLA.

*Id.* at 563-64 (emphasis added). The Fifth Circuit additionally resisted the parishes efforts to read into § 1349 an "artificial limit" requiring that the "situs" of the injury occur on the Outer Continental Shelf. *See id.* at 164.

In short, any dispute arising out of or connected to activities that even *affect* the efficient exploitation of resources from the Gulf is subject to federal court jurisdiction. *See EP Operating*, 26 F.3d at 568; *see also Wilson Indus. v. Aviva Am. Inc*., 185 F.3d 492, 493 n. 1 (5th Cir. 1994) ("The OCSLA confers original jurisdiction in controversies which are indirectly connected with operations on the outer Continental Shelf conducted for the purpose of developing natural resources.")(quoting *Fluor Ocean Services, Inc. v. The Rucker Company, Inc.*, 341 F. Supp. 757, 760 (E.D. La. 1972)).

Federal courts in the Fifth Circuit routinely exercise jurisdiction over disputes, contractual or otherwise, featuring any nexus with the exploration, development, or production of oil on the Outer Continental Shelf. In *United Offshore Co. v. Southern Deepwater Pipeline Co.*, for instance, two co-owners of a natural gas line were fighting over whether one co-owner had the authority to remove the other's operator. 899 F.2d 405, 406 (5th Cir. 1990). The Fifth Circuit held that 43 U.S.C. § 1349(b)(1) conferred federal subject matter jurisdiction over the dispute, even though it was "one step removed" from the actual exploration, development or production of minerals. *Id.* at 406-07.

5

In *Thibeaux v. Merit Energy Co., LLC*, the defendant filed a third party complaint alleging that the third-party defendant, pursuant to a Master Services Agreement, had agreed to indemnify and hold the defendant harmless.  920 F. Supp. 2d 706 (W.D. La. 2013).  Similarly to the Defendants here, the third-party defendant argued that the Fifth Circuit "'specifically limited' jurisdiction to actions which 'would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources.'"  *Id.* at 711 (*quoting EP Operating*, 26 F.3d at 570).  The court, however, deemed this "conception of the scope of the OCSLA" to be "too narrow."  920 F. Supp. 2d at 711.  The court held that the "entire range of legal disputes … relating to resource development on the Outer Continental Shelf" would "necessarily include a contractual indemnity dispute arising out of an operation on the OCS which involved the exploration, development or production of subsurface  resources." *Id.*; *see also Amoco Production Co.*, 844 F.2d 1202 (dispute over exercise of take-or-pay rights necessarily had effect on production of well and thus arose "in connection with" an "operation" on the OCS); *Petrobras Am., Inc. v. Union Oil Co*., 177 Fed. Appx. 460, 461 (5th Cir. 2006) ("Petrobras' claims arise out of and are in connection with the parties' drilling operations on the Outer Continental Shelf and therefore fall within the Outer Continental Shelf Lands Act's jurisdictional grant, 43 U.S.C. § 1349(b)(1)(A)").

## III.    FACTS SUPPORTING JURISDICTION

Considered together, the exhibits attached to this Memorandum establish both that (1) the business relationship between the parties would not have arisen but for Cox's offshore operations and (2) the services EPS Logistics provided directly related to and affected Cox's exploitation of offshore resources.  This Court may accordingly exercise subject-matter jurisdiction over this dispute.

6

The declaration of Rodney Dykes, President and Chief Operating Officer of Cox, is attached as Exhibit A. As he relates, Cox acquired from Chevron a number of hydrocarbon-producing assets in the Gulf of Mexico, including wells, platforms, caissons and other offshore structures.[2] Cox engaged EPS Logistics as a result of the acquisition of these assets.[3] EPS Logistics primarily provided dock and dispatching services, assisting in the transport of personnel, goods, and equipment to offshore locations.[4] Had Cox not acquired these assets from Chevron, it would not have retained the services of EPS Logistics.[5] In 2018, Cox acquired Energy XXI Gulf Coast, Inc. ("Energy XXI"), which operated a number of offshore wells and worksites in the Gulf of Mexico. The Energy XXI acquisition furthered the need for Cox to rely on the services of EPS Logistics to assist in Cox's offshore operations.[6]

In support of their Petition, Plaintiffs attach several documents, including a summary of invoices, that purportedly support their claims, which are attached hereto as Exhibit B.[7] These exhibits appear to reference work performed in connection with wells and worksites that are located on the Outer Continental Shelf.[8] For instance, Exhibit 2 references work performed at the "SMI 236 ALL", "SMI 239 ALL" and "SMI 240 ALL" locations, which are part of the South Marsh Island area offshore and subject to federal lease OCS 00310, attached hereto

---

[2]   Exhibit A, ¶ 2.

[3]   *Id.*, ¶¶ 3-4.

[4]   *Id.*, ¶ 3.

[5]   *Id.*, ¶ 4.

[6]   *Id.*, ¶ 5.

[7]   *See* Exhibit B.

[8]   *See* Exhibit A, ¶¶ 7-8.

1301488v.2

as Exhibit C.[9]  Additionally, the "SMI 236" block is partly covered by federal lease OCS-G-04437, attached hereto as Exhibit D.  Any work performed or services rendered by Plaintiffs in connection with these areas necessarily related to Cox's activities on the Outer Continental Shelf, in areas subject to federal leases.[10]  In seeking payment for work performed at these locations, Plaintiffs are asking for recovery for goods and services that assisted Cox in its offshore operations.

Another location identified in Plaintiff's exhibits, WC17 (West Cameron 17), includes offshore areas and is subject to several federal leases, including OCS-G-01351 (attached as Exhibit E) and OCS-G-04661 (a decision establishing the lease attached as Exhibit F).[11] Services rendered and goods delivered in these areas necessarily assisted Cox's operations in the Outer Continental Shelf.[12]

Even when EPS Logistics provided dock and dispatching services at onshore locations, the items for which EPS Logistics provided these services were delivered to offshore facilities, and the services directly assisted Cox in its offshore operations.[13]  Now that Plaintiffs have ceased providing these services, Cox has had to rely on other vendors to provide such goods and services in connection with Cox's offshore hydrocarbon-producing assets.[14]

---

[9]       *See id.*, ¶ 7; Exhibit B, Exhibit 2 to Petition;

[10]      *See* Exhibit A, ¶ 7.

[11]      *See* Exhibit A, ¶ 8.

[12]      *Id.*

[13]      *Id.*, ¶ 9.

[14]      *Id.*, ¶ 10.

1301488v.2

There thus exists the requisite "connection" between Plaintiffs' claims and Cox's exploration and exploitation of resources on the Outer Continental Shelf for this Court to exercise jurisdiction under 43 U.S.C. 1349(b)(1). *See in re Deepwater Horizon*, 745 F.3d at 163-64. But for Cox's operations in the Gulf of Mexico, Cox would have never engaged EPS Logistics or relied on EPS to provide dock and dispatching services over the past five years—including with respect to the alleged work for which Plaintiffs now seek payment.[15] Accordingly, but for Cox's offshore hydrocarbon-producing activities, this dispute never would have arisen. *See Recar*, 853 F.2d at 369. In addition, this claim clearly relates to and has an impact on Cox's ongoing operations on the Outer Continental Shelf, given the need for Cox to rely on other vendors and service providers to conduct its Gulf operations.[16]

This case falls well within the "entire range of disputes" over which Congress intended to confer jurisdiction. *See EP Operating*, 26 F.3d at 569. Neither this particular dispute nor the relationship between Cox and Plaintiffs would ever have materialized if it were not for Cox's operations in the Gulf of Mexico, and the dispute is having and will continue to have an impact on Cox's offshore exploration and exploitation of resources. The Fifth Circuit has reiterated, time and again, that this sort of "but for" connection suffices for the Court to exercise jurisdiction pursuant to OCSLA.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and as supported by the foregoing the Court has jurisdiction to hear this dispute under 43 U.S.C. § 1349.

Date: June 3, 2021

---

[15]     *See* Exhibit A, ¶¶ 2-8, 11.

[16]     *See* Exhibit A, ¶ 10.

1301488v.2

Respectfully submitted,

_____/s/ John M. Landis_____
John M. Landis, 7958
*jlandis@stonepigman.com*
Edward B. Poitevent, II, 10564
*epoitevent@stonepigman.com*
Walter F. Metzinger, III, 37799
*fmetzinger@stonepigman.com*
Of
STONE PIGMAN WALTHER WITTMANN
L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112-4042
Telephone: (504) 581-3200

*Attorneys for Cox Operating, L.L.C.*

1301488v.2